IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YOLANDA RIVERA-MERCADO, | CIVIL NO.: 06-1018 (JAG/MEL) |
| Plaintiff, | RE:   American with Disabilities Act |
| v. | |
| SCOTIABANK DE PUERTO RICO-INTERNATIONAL; SCOTIABANK DE PUERTO RICO, INC.; JORGE SIERRA, ARLENE MARRERO; ABC INSURANCE COMPANY, | TRIAL BY JURY REQUESTED |
| Defendants. | |

**REPORT AND RECOMMENDATION**

I.   **PROCEDURAL BACKGROUND**

On January 5, 2006, plaintiff Yolanda Rivera-Mercado ("Rivera") filed the complaint in this case against: (1) Scotiabank de Puerto Rico-International;  (2) Scotiabank de Puerto Rico, Inc.; (3) Jorge Sierra ("Sierra"); (4) Arlene Marrero ("Marrero"); and (5) ABC Insurance Company, as an unknown defendant (collectively, "defendants").[1]  Rivera alleges that she was terminated from her employment at SBPR because of her asthma condition, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.   Docket No. 1.

---

[1] The complaint, however, fails to make any distinction between  Scotiabank de Puerto Rico-International and Scotiabank de Puerto Rico, Inc. and fails to specify which of the allegations contained therein are directed to each of said entities.  Instead, all the allegations in the complaint are directed towards an entity named "Scotiabank de Puerto Rico" ("SBPR").  See Docket No. 1.  In light of this, the court will assume that Scotiabank de Puerto Rico-International, Scotiabank de Puerto Rico, Inc. and SBPR are the same entity and that all the claims and allegations asserted in the complaint are directed towards SBPR.

1

On May 15, 2007, defendants moved for summary judgment on Rivera's claims.  Docket No. 22.  On July, 2, 2007, Rivera opposed the request for summary judgment.  Docket No. 39.  Defendants replied on August 13, 2007, and Rivera surreplied on September 7, 2007.  Docket No. 47 and 54, respectively.

Pursuant to the Referral Order issued by the court on October 4, 2007, defendants' request for summary judgment was referred to the undersigned for a Report and Recommendation.  Docket No. 57.

## II.    FACTUAL BACKGROUND

The following material facts are not in genuine issue or dispute pursuant to the stipulations and supporting evidence submitted by the parties:

1.    SBPR is a financial corporation organized under the laws of the Commonwealth of Puerto Rico.  Docket No. 22, Defendants' Statement of Uncontested Facts ("SUF"), ¶ 1; Docket No. 39, Rivera's Reply Statement of Facts ("RSF"), ¶ 1 .

2.    Rivera began working as a Manager of the Plaza Escorial branch of SBPR on February 27, 2003.  Previously, she had worked with First Bank for over thirty-three years.  Docket No. 22, SUF, ¶¶ 2, 3 and Exhibit 1 (Rivera's depo., page 12, line 5); Docket No. 39, RSF, ¶¶ 2, 3; see also Docket No. 1 (Complaint, ¶ 5).

3.    In general terms, as Manager of the Plaza Escorial branch of SBPR, Rivera was:

responsible for generating and maintaining maximum business volumes and related revenues, consistent with negotiated short and long-term objectives of the Bank, by developing new business opportunities and expanding existing connections; ensuring

> the delivery of a high standard of customer service, controlling branch operations;
> and by the effective management of the branch's human, financial and other
> resources.

Docket No. 22, Exhibit 2 (Branch Manager Job Description, page 1) and SUF, ¶4; Docket No. 39,

RSF, ¶ 4.

4.      Rivera received information of or documents containing SBPR's anti-discrimination

and anti-harassment policies, as well as the bank's affirmative action policies for the disabled.

Docket No. 22, SUF, ¶ 5; Docket No. 39, RSF, ¶ 5.

5.      Rivera's performance as of October 28, 2003, was appraised as part of her

Performance Appraisal Report ("PAR") as "Meets Expectations", even though "business targets

were not met," since she had only contributed to the branch's operations for half a year.  Rivera

signed the PAR on December 15, 2003. Docket No. 22, Exhibit 5 (Performance Appraisal Report,

page 3) and SUF, ¶ 6; Docket No. 39, RSF, ¶ 6.

6.      An Audit Report of the Plaza Escorial branch performed on December, 2003, reported

that "overall conditions in Escorial Branch are classified as Needs Improvement."  Docket No. 22,

SUF, ¶ 7; Docket No. 39, RSF,  ¶ 7.

7.      In particular, said report determined that improvement was required in the following

areas: commercial loans, compliance, retailing, operations management and sales delivery.  Docket

No. 22, Exhibit 6 (Audit Report, pages 3-4).

8.      SBPR conducted a "Branch Revision Visit" in the Escorial branch on August 3, 2004.

Docket No. 22, SUF, ¶ 9; Docket No. 39, RSF, ¶ 9.

Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 4

9.      Some of the findings reported during the August 3, 2004, visit to the Plaza Escorial branch of SBPR include: (1) not correcting certain findings from a previous visit; (2) the "Call Program" was in disarray; (3) loans had not been adequately developed; and (4) coaching of the assistant managers was inadequate as well as Rivera's marketing efforts.  Docket No. 22, Exhibit 7 (Letter from Sierra and Marrero to Rivera, dated August 6, 2004) and SUF, ¶ 10; Docket No. 39, RSF, ¶ 10).[2]

10.     In light of the deficiencies found during the August 3, 2004, visit to the Plaza Escorial branch of SBPR, Rivera was placed on a Performance Improvement Program ("PIP").  Docket No. 22, Exhibit 7 (Letter from Sierra and Marrero to Rivera, dated August 6, 2004) and SUF, ¶ 11; Docket No. 39, RSF, ¶ 11.[3]

11.     On August 23, 2004, a status report of a review of the files of the Plaza Escorial branch of SBPR showed that many of said files had many deficiencies (over 67% of the reviewed files needed correction).  Docket No. 22, Exhibit 8 (Status Report, dated August 23, 2004) and SUF, ¶ 12; Docket No. 39, RSF, ¶ 12.[4]

─────────────────────

[2] Rivera qualifies this statement alleging that she sent an electronic mail message to Sierra explaining certain facts relevant to the reported findings.  Docket No. 39, RSF,  ¶ 10 and Exhibit 2 (Electronic mail message from Rivera to Sierra, dated August 9, 2004).  Plaintiff's allegations do not contradict the facts stated herein.

[3] Rivera qualifies this statement alleging that she requested a "reevaluation" of her performance insofar she believed that her placement on the PIP was an unwarranted sanction.  Docket No. 39, RSF, ¶ 11; Docket No. 22, Exhibit 9 (Letter from Rivera to Thomas Johnson ("Johnson"), dated August 24, 2004).  Plaintiff's allegations do not contradict the facts stated herein.

Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 5

12.     On August 24, 2004, Rivera requested that her performance be re-evaluated since she did not agree with her placement on the PIP.  Docket No. 22, SUF, ¶ 13; Docket No. 39, RSF, ¶ 13.

13.     On August 26, 2004, Rivera was informed that, in addition to the performance issues that had been informed to her when she was placed on the PIP, she had also violated the bank's policies and procedures related to the Customer Identification Program ("CIP").  Docket No. 22, SUF, ¶ 14; Docket No. 39, RSF, ¶ 14.

14.     The CIP is a federally mandated program that requires that a financial institution adequately maintains certain customer identifiers to protect United States citizens from terrorism and money laundering.  Docket No. 22, SUF, ¶ 15; Docket No. 39, RSF, ¶ 15.

15.     On September 7, 2004, Rivera was once again informed that her performance was poor and that the bank was in potential regulatory risk.  Docket No. 22, SUF,  ¶ 16; Docket No. 39, RSF, ¶ 16.

16.     Rivera was informed that there would be a formal review of her and of Plaza Escorial branch's performance on October 31, 2004.  Docket No. 22, SUF, ¶ 17; Docket No. 39, RSF, ¶ 17.

17.     The formal review states that the Plaza Escorial branch of SBPR was in a state of disarray where almost all areas of the branch that were inspected were deficient ("the takeover procedures, the attention to compliance policies, the attention to significant account movements, the

_____

[4] Rivera qualifies this statement alleging that the status report also showed that the deficiencies were corrected that same day and that Johnson later congratulated her for her work in reviewing and correcting the files.  Docket No. 39, RSF, ¶ 12 and Exhibit 2, page 4 (Electronic mail message from Johnson to Rivera, dated September 23, 2004); Docket No. 22, Exhibit 9 (Letter from Rivera to Thomas Johnson, dated August 24, 2004).  Plaintiff's allegations do not contradict the facts stated herein.

<u>Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.</u>
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 6

actioning of the recycle report, workflow issues (commercial account openings and administration

issues) are all far form bank standards")).  Docket No. 22, SUF, ¶ 19 and Exhibit 14 (Sales & Service

Support Site Visit, page 12).

18.     Rivera's employment was terminated on November 12, 2004.  Docket No. 22, SUF,

¶ 20; Docket No. 39, RSF, ¶ 20.

19.     Rivera suffers from asthma.  Docket No. 22, SUF, ¶ 21; Docket No. 39, RSF, ¶ 21.

20.     Prior to her termination, no one from SBPR mentioned anything about her alleged

asthma condition.  Docket No. 22, SUF, ¶ 23; Docket No. 39, RSF, ¶ 23.

21.     Rivera does not consider herself to be disabled.  Docket No. 22, SUF, ¶ 24; Docket

No. 39, RSF, ¶ 24.

22.     Rivera does not consider that her asthma condition impaired her ability to perform

her duties as Manager of the Plaza Escorial branch of SBPR.  Docket No. 22, SUF,  ¶ 25; Docket

No. 39, RSF, ¶ 25.

23.     When asked if she had ever requested reasonable accommodation for her asthma

condition, Rivera answered: "No sir, I had no reason to do so."  Docket No. 22, SUF,  ¶ 26; Docket

No. 39, RSF, ¶ 26.

24.     On April 21, 2005, Rivera filed a disability discrimination charge in the Equal

Employment Opportunity Commission.  Docket No. 22, SUF, ¶ 27; Docket No. 39, RSF, ¶ 27.

<u>Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.</u>
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 7

## III.    SUMMARY JUDGMENT STANDARD

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), 28 U.S.C.; <u>see also</u> <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52. (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."  <u>See</u> Fed.R.Civ.P. 56(c), 28 U.S.C. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  <u>Suarez v. Pueblo Int'l, Inc.</u>, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine".  "Material" means that a contested fact has the potential to change the outcome of the suit under governing law.  The issue is "genuine" when a

reasonable jury could return a verdict for the nonmoving party based on the evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F. 2d 932, 936 (1st Cir. 1987).

Finally, when considering a request for summary judgment, unsettled issues of motive and intent as to the conduct of any party will normally preclude the court from granting summary judgment. Mulero-Rodríguez v. Ponte, Inc., 98 F. 3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); see also Tew v. Chase Manhattan

Bank, N.A., 728 F. Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment.  These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"); Pearson v. First N H Mortgage Corp., 200 F. 3d 30, 35, n.2 (1st Cir. 1999).  However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." Ayala-Genera v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

## IV.   LEGAL ANALYSIS

Congress enacted ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  The purpose of ADA is to protect qualified persons with a disability from discrimination in employment. 42 U.S.C. § 12112(a).  ADA prohibits discrimination against an otherwise qualified individual based on his or her disability in all employment practices, including, but not limited to job application procedures, hiring, firing, advancement and compensation.  Id.

To establish a claim of disability discrimination under the ADA, a plaintiff must show that: (1) he suffers from a "disability" within the meaning of the statute; (2) he was able to perform the essential functions of the job, with or without reasonable accommodation; and (3) the employer took adverse employment against him due to the disability.  Lebrón-Torres v. Whitehall Laboratories, 251 F.3d 236, 239 (1st Cir. 2001); Feliciano v. State of Rhode Island, 160 F.3d 780, 784 (1st Cir .1998)

9

Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 10

(citing Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir.1996)).  Thus, the threshold question in

any ADA action is whether the plaintiff can make a showing of disability.   Lessard v. Osram

Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999); Vélez v. Janssen Ortho LLC, 389 F.Supp.2d 253,

263 (D.P.R. 2005); Sifre v. Department of Health, 38 F.Supp.2d 91, 99  (D.P.R. 1999) (citing Roth

v. Lutheran General Hosp., 57 F.3d 1446, 1455 (7th Cir. 1995).

ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits

one or more of the major life activities of such individual;(B) a record of such an impairment; or

(C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  In order to determine

whether a person is disabled under the ADA, the court must conduct a tripartite analysis.  Bragdon

v. Abbott, 524 U.S. 624, 631 (1998); Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002).

First, plaintiff must prove that he suffers from a physical or mental impairment.  Carroll, 294 F.3d

at 238.[5]  Second, the court must evaluate the life activities affected by the impairment to determine

if they constitute a "major life activity".  Id.  Lastly, "tying the two statutory phrases together, we ask

whether the impairment substantially limits the activity found to be a major life activity."  Id.;

Lebrón-Torres, 251 F.3d at 239-40.

Defendants move the court to enter summary judgment as to Rivera's claims alleging that

---

[5] Under ADA regulations, a physical or mental health impairment is defined as: "Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(1).

her asthma condition did not render Rivera disabled within the meaning of the ADA. To support this allegation, defendants emphasize the point that Rivera admits as uncontested facts that she did not consider herself to be disabled, did not consider that her asthma condition impaired her ability to perform her duties as Manager of the Plaza Escorial branch of SBPR and never requested, and had no reason to request, reasonable accommodation for her asthma condition. Docket No. 22, SUF, ¶¶ 22-24; Docket No. 39, RSF, ¶¶ 22-24. In particular, defendants argue that Rivera fails to submit any evidence that she is a disabled individual for purposes of the ADA or that she was impaired or unable to perform any major life activity. Docket No. 22 (Memorandum of Law in Support of Motion for Summary Judgment, pages 7-9).

Rivera claims that "despite her limitations, she was able to perform her job without accommodation and that even if she did exhibit deficiencies in her performance, there is direct evidence that her disability was the motivating factor or at least one of the motivating factors" for her termination. Docket No. 39 (Opposition to Motion for Summary Judgment, page 6); see also Docket No. 54 (Surreply, page 2) ("Plaintiff presented sufficient evidence to support all reasonable inferences in her favor regarding her disability."). According to Rivera, said evidence consists of: (1) her medical record (which allegedly documents her asthma condition) (Docket No. 39, Exhibit 1); (2) the fact that defendants were aware that she suffered from asthma, as evidenced by a document titled "Branch Review Summary", dated October 14, 2004, in which it is stated that: "Attendance is high. Just the Manager had several absences due to her asthma condition." (Docket No. 39, Exhibit 4, page 3); (3) the fact that her condition allegedly impaired her in the major life

activity of breathing (which in turn limited her in other major life activities as well, such as speaking, walking, running or working) to the point that she had an oxygen tank in her workplace to help her breathe when she needed it (see Docket No. 54, page 3);[6] and (4) the fact that she used several medications, such as Advair, Albuterol and Foradil, to treat her asthma condition.[7]

Rivera further alleges that "even if it [is] concluded that [she] is not disabled under ADA, she was regarded as disabled by her employer", as demonstrated by some handwritten annotations contained in her termination letter.   Docket No. 39 (Opposition to Motion for Summary Judgment, page 7).   One of said annotations states the following:

> 11/12/04 - 3:50 pm.  In a conversation with Yolanda Rivera (Marrero/Sierra), she informed us that her most recent recurring absences were due to the fact that she suffered from asthmatic bronchitis, but that her asthma is not an obstacle in the performance of her work, that its has nothing [to do] with [her] position/job at the bank.

Docket No. 37, Exhibits 1, 2.   Marrero's signature appears below this note.   Id.   The second

---

[6] It is not entirely clear whether, despite her admission that her asthma condition did not impair her ability to perform her duties as Manager of the Plaza Escorial branch of SBPR (see Docket No. 22, SUF, ¶¶ 24-26; Docket No. 39, RSF, ¶¶ 24-26), Rivera is also claiming that her asthma substantially impaired her ability to work.  In the reply, defendants assert that it was in the opposition to the request for summary judgment that Rivera alleged, for the first time and "through the 'back door'", that she was impaired of working as a result of her asthma, and that said specific allegation was not made in the complaint.  See Docket No. 47, page 4.  In the sur-reply, Rivera responds that she "did not allege, through the back door, as [d]efendants states, that she was limited in her ability to work."  Docket No. 54, page 3.  Rivera, however, asserts that she "clearly stated that she was limited in her ability to breathe due to her asthma condition", but that it could be "argued that the ability to breath is so central to life itself, that the ability to work can be limited by such condition."  Id.

[7] According to Rivera, Advair is a medication used as a "maintenance treatment", Albuterol is used for "sudden asthma attacks" and Foradil is "a long acting bronchodilator used to open air passages to improve breathing".  Docket No. 39 (Opposition to Motion for Summary Judgment, page 6).

handwritten annotation states that Rivera "was given the opportunity to resign, but she preferred to be dismissed." Id. Both Marrero's and Sierra's signatures appear below this second annotation. Id.

As stated before, ADA regulations include"[a]ny physiological disorder, or condition ... [that] affect[s] ... respiratory ... organs" within the definition of "physical or mental impairment." 29 C.F.R. § 1630.2(h)(1). Thus, Rivera's asthma is a physical impairment within the meaning of ADA. To be a disability, however, said impairment must also substantially limit a major life activity. Major life activities include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); see also Reeves v. Johnson Controls World Services, Inc., 140 F.3d 144, 152 (2nd Cir. 1998) ("A plaintiff claiming that her asthma substantially limits her ability to engage in the major life activity of breathing is not first asked to prove that breathing is a major life activity for her."). Rivera is "substantially limited" in a major life activity if she is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

The determination of whether an impairment is substantially limiting is made on an individual basis by considering three factors: (1) "[t]he nature and severity of the impairment"; (2) "[t]he duration or expected duration of the impairment"; and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29

<u>Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.</u>
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 14

C.F.R. § 1630.2(j)(2).

In light of the fact that Rivera admits as an uncontested fact that she did not consider herself

to be disabled and never requested reasonable accommodation for her asthma condition because she

had no reason to do so and, more importantly, insofar she never considered that her asthma condition

impaired her ability to perform her duties, <u>see</u> Docket No. 22, SUF, ¶¶ 22-24; Docket No. 39, RSF,

¶¶ 22-24, Rivera can not now claim that she is disabled and that her asthma condition substantially

impaired her ability to perform her job.  Although in her opposition to the motion for summary

judgment and her subsequent sur-reply plaintiff alleges that it would be readily apparent to a jury that

she is substantially limited in the major life activity of breathing (Docket 39, page 6; Docket No. 54,

page 3), she fails to make a single citation to the record in support of her contention.  Therefore,

these conclusory allegations are insufficient to retract plaintiff's admissions during her deposition

to the effect that she did not view herself as disabled or as having an impairment to perform her job

duties.  <u>See</u> Docket No. 34, Exhibit 1 (Rivera's depo., page 58, lines 13-14); Docket No. 52, Exhibit

1 (Rivera's depo., page 60, lines 16-18).[8]

In addition, the claim that Rivera was impaired in the major life activities of speaking,

running, walking and/or working is made for the first time in the opposition to the request for

---

[8] During her deposition, Rivera made the following admissions:
Q        Do you consider yourself a person with disabilities?
A        No. ...
Docket No. 34, Exhibit 1 (Rivera's depo., page 58, lines 13-14).  She also provided the following testimony:
Q        Did you on any occasion request reasonable accommodation?
A        No, sir.  I did not have a reason to do so.
Docket No. 52, Exhibit 1 (Rivera's depo., page 60, lines 16-18).

Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 15

summary judgment, and in the subsequent sur-reply.  Docket No. 39, page 6; Docket No. 54, page

3.  In the complaint, however, Rivera fails to allege that her asthma condition impaired her in said

major life activities.  See Docket No. 1.  To that extent, the court explained in Alamo-Rodríguez v.

Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144 (D.P.R. 2003), that:

> Plaintiff, in the complaint, limited his allegations, and only sustained that he
> was a disabled individual, that he could work if given accommodation, and that
> [d]efendant discriminated against him for failure to provide the reasonable
> accommodation he requested. Plaintiff, for the first time in his [o]pposition [...],
> identifies, and alleges, without more, that the three life activities of having sex, sleep,
> and exercise, were burdened. The [c]ourt will not allow [p]laintiff to attempt to
> amend his allegations through the [o]pposition pleading. It is one matter that the
> [c]ourt must analyze the factual scenario in this case construing the facts, the record,
> and all reasonable inferences in the light most favorable to the party opposing
> summary judgment.  Another is to allow the [p]laintiff to bring forth new never
> raised allegations, and previously unmentioned major life activities that have been
> allegedly affected. The [c]ourt is not obliged to search the record, where [p]laintiff
> failed to request to amend the complaint, in order to set forth those new allegations,
> and theories.

Id., at 153 (internal citations omitted).  Having failed to allege in the complaint that she was limited

in the major life activities of speaking, running, walking or working, Rivera can not now attempt to

amend her allegations by claiming for the first time in the opposition and sur-reply that her ability

to do so was impaired by her asthma.

Furthermore, the evidence submitted by Rivera is insufficient to support her claim that her

asthma condition rendered her disabled within the meaning of the statute.  First, although Rivera

submits her medical record which allegedly "document[s] her asthma condition" and her "asthma

related hospitalizations and medications since 1998" (Docket No. 54, Surreply, page 2; Docket No.

15

39 (Opposition to Motion for Summary Judgment, page 6), she makes no specific references to said record in support of her allegations that her condition is of such nature and degree that she is substantially limited in a major life activity.  Furthermore, Rivera can not rely on her asthma diagnosis alone to prove disability under the ADA.  As stated by the Supreme Court in Toyota Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002):

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.  Instead, the ADA requires those "claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial."

Id., at 198; see also Calef v. Gillet Co., 322 F.3d 75, 83 (1st Cir. 2003); Carroll, 294 F.3d at 238; Alamo-Rodríguez, 286 F.Supp.2d at 156.  Finally, when evaluating whether an individual is substantially limited in a major life activity, courts are to consider mitigating measures, such as medication, and their impact on the activity. To that extent, it has been established that:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken.  A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity.  To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected, it does not "substantially limi[t]" a major life activity.

Sutton v. United Airlines, 527 U.S. 471, 482-83 (1999).  Thus, the relevant inquiry regarding Rivera's need to use several medications and treatments for her asthma and to have an oxygen tank in her workplace to help her breathe is whether the use of said drugs and treatments corrected

Rivera's asthma and hence eliminated any substantial limitation of a major life activity. Since Rivera admitted in her deposition that she did not consider herself as having a disability, then the logical conclusion of Rivera's own admission is that the medications and treatments that she was receiving corrected any impairment, if said impairment ever existed.

Thus, the court determines that Rivera has failed to present sufficient evidence to create a genuine issue of material fact as to whether her asthma condition rendered her disabled within the meaning of the ADA. This conclusion, however, does not end the inquiry. In her opposition to summary judgment, Rivera also alleges that even if her asthma did not render her disabled within the meaning of the ADA, she is still protected by said statute because defendants regarded her as being disabled as a result of her condition. Docket No. 39 (Opposition to Motion for Summary Judgment, page 7) ("even if it [is] concluded that [she] is not disabled under ADA, she was regarded as disabled by her employer"). In support of this allegation, Rivera claims that Marrero, former Human Resources Manager of SBPR, in the presence of Sierra, Vice-President of "Branch Banking" of SBPR, told her on the day of her termination that "maintaining an oxygen tank in the office affects the image of the Bank." Docket No. 22, SUF, ¶ 22; Docket No. 39, RSF, ¶ 22. Plaintiff also points to the fact that defendants mentioned Rivera's asthma in the Branch Review Summary and to the handwritten comments in the termination letter. Docket No. 39, Exhibit 4, page 3; Docket No. 37, Exhibit 3. In evaluating plaintiff's allegation that she was regarded as disabled the court will indulge all reasonable inferences in her favor and accept as true, for purposes of evaluating the merits of the motion for summary judgment, the factual allegations mentioned above.

Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 18

As stated before, ADA's definition of "disability" includes those individuals with impairments that substantially limit their major life activities, as well as those who are "being regarded as having such an impairment." 42 U.S.C § 12102(2)(C). The purpose behind this provision is to avoid situations where an individual is "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities". 29 C.F.R. pt. 1630, App. § 1630.2(l); Sch. Bd. of Nassau County v. Arline, 480 U.S. 273, 287 (1987); see also, Sutton, 527 U.S. at 489-90; Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 117 (1st Cir. 2004) ("By protecting employees from discrimination based on their employer's mistaken impression that they are disabled, Congress recognized that 'society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.'").

Pursuant to the Supreme Court's decision in Sutton:

There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when in fact, the impairment is not so limiting.

Sutton, 527 U.S. at 489; Sullivan, 358 F.3d at 117; Bailey v. Georgia Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002); Carroll, 294 F.3d at 238 n. 4; Rodríguez-García v. Junta de Directores, 415 F.Supp.2d 42, 45 (D.P.R. 2006).

"The decisive issue in determining whether a plaintiff is disabled because his employer

18

Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 19

regarded him or her as such, is the perception of the employer with respect to the employee's alleged impairment." Arce-Montalvo v. Hospital Buen Samaritano, 384 F.Supp.2d 515, 519 (D.P.R. 2005) (citing Vázquez v. Salvation Army, Inc., 240 F.Supp.2d 150, 154 (D.P.R. 2003)). Thus, "[a] plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." Benoit v. Technical Mfg. Corp., 331 F.3d 166, 176 (citing Bailey, 306 F.3d at 1169); see also Sullivan, 358 F.3d at 117.  Furthermore, the Supreme Court has ruled that "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than one particular job." Murphy v. UPS, 527 U.S. 516, 523 (1999); see also 29 CFR § 1630.2(j)(3)(I).  A plaintiff must show that he was perceived as being unable to work in "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." Murphy, 527 U.S. at 523; Bailey, 306 F.3d at 1170 (affirming summary judgment based on the plaintiff's failure to demonstrate that the employer regarded him as "unfit for either a class or a broad range of jobs").[9]

In the case at bar, Rivera claims that "the only explanation to the notes made to her termination letter after her superiors met with her to inform her of their decision" and the comments

---

[9] As stated in Rodríguez-García v. Junta de Directores de Cooperative Jardines de San Ignacio, 415 F.Supp.2d 42, 47 n. 6 (D.P.R. 2006), the First Circuit noted in Sullivan that "the approach to the 'regarded as' prong that the Supreme Court took in Murphy has been subjected to a significant amount of academic criticism," because " under the 'class of jobs' analysis it is virtually impossible for a claimant to establish a 'regarded as' claim.  However, the Supreme Court has not altered the Murphy precedent."  See Sullivan, 358 F.3d at 118 n. 4.

made by Marrero when she was discharged is that defendants regarded her as disabled.  Docket No.

39, Exhibit (Opposition to Motion for Summary Judgment, page 7).

The mere fact that the employer is aware of the employee's impairment is insufficient to

demonstrate either that the employer regarded the employee as disabled or that the perception caused

the adverse employment action.  Soler v. Tyco Electronics, Inc., 268 F.Supp.2d 97, 108 (D.P.R.

2003) (quoting Kelly v. Drexel University, 94 F.3d 102, 109 (3rd Cir. 1996).  Rivera implicitly

argues that in her case, the perception caused the adverse employment action.  In her deposition,

Rivera recounts the following events:

> Q.    Okay.   The commentary that you mention in the complaint is that
> "maintaining an oxygen tank at the office affects the image of the bank."  Were you
> ever, prior to that time that you allege that Arlene Marrero made mention of that,
> been told anything as to the oxygen tank?
>
> A.    No. Sir.
>
> Q.    You mean to say that in a year and a half no one ever made mention of
> anything?
>
> A.    No, sir.
>
> Q.    Was it at the time of the meeting of the discharge, that you were told about
> the remark?
>
> A.    That was the reason I was given for the discharge.  Moreover I was told, "we
> come with two alternatives, the first is that you resign and leave for "disability".  And
> I asked, "what about the second"? And he said, "if you don't leave, I'll fire you."  And
> I told him I preferred the second.

Docket No. 52, Exhibit 1 (Rivera's depo., page 59, line 20 to page 60, line 15); see also Id., page 58,

lines 9 through 11, and page 61, lines 12 through 17.

Rivera-Mercado v. Scotiabank de Puerto Rico, Int., et al.
Civil No. 06-1018 (JAG/MEL)
Report and Recommendation
Page No. 21

A reading of the complaint reveals that Rivera fails to specifically allege that defendants regarded her as disabled as required by the ADA. Although the complaint alleges that defendants knew that Rivera was asthmatic and that she was required to maintain an oxigen tank nearby to help her breathe better when she was short of breath, said allegations are insufficient to state a claim that defendants regarded Rivera as disabled as a result of her asthma. See Saunders v. Baltimore County, Md., 163 F.Supp.2d 564 (D.Md. 2001) (finding plaintiff alleged only that employer was aware of his asthma, and not that employer perceived plaintiff as disabled as a result of his asthma). The first time that Rivera specifically alleged that defendants regarded her as disabled was in the opposition to the request for summary judgment. Docket No. 39, Exhibit (Opposition to Motion for Summary Judgment, page 7). Having Rivera failed to make this allegation in the complaint, she can not maintain her claim that she was perceived as disabled by the defendants. Id.; see also Medlock v. City of St. Charles, 89 F.Supp.2d 1079, 1082 (E.D.Mo. 2000) (finding that plaintiff could not proceed in her ADA suit under a theory that she was regarded as being disabled, since her complaint did not state that the employer perceived the plaintiff as having a substantially limiting impairment); Lee v. Southeastern Pennsylvania Transp. Authority, 418 F.Supp.2d 675, 679-680 (E.D.Pa. 2005) (plaintiff was granted leave to re-plead claims under ADA where complaint did not adequately allege an actual impairment and contained no allegations suggesting that the plaintiff was regarded as disabled and therefore, did not entitle plaintiff to such an inference); Dean v. Westchester County P.R.C., 309 F.Supp.2d 587, 595-96 (S.D.N.Y. 2004) (the complaint and its amendments, read together, failed to allege sufficient facts to show that the plaintiff had a record of an impairment that

substantially limited his ability to perform a major life activity, or that he was regarded as having such an impairment).

Moreover, even if the court were to consider Rivera's claims that, due to her asthma, defendants regarded her as impaired in her ability to breath and/or work, said claims would still fail to survive defendant's request for summary judgment.  Even if it is true that Rivera was limited in the major life activity of breathing and that this limitation impaired her ability to work, and even if defendants did in fact consider Rivera to be disabled for her particular job as Branch Manager of the Plaza Escorial branch of SBPR, Rivera still fails to present any evidence that defendants regarded her as disabled with respect to "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities."  See Murphy, 527 U.S. at 523; Bailey, 306 F.3d at 1170.  In the absence of such evidence, the court determines that as a matter of law Rivera cannot succeed in her claim that she is disabled under the ADA because defendants regarded her as such.

Therefore, insofar Rivera does not present sufficient evidence to create a material issue of fact as to the threshold determination regarding Rivera's status of "disabled" within the meaning of the ADA (either under the "regarded as" provision of said statute or under the substantial limitation of a major life activity provision), the court concludes that Rivera can not maintain her ADA claims of disability discrimination against defendants.  See Lessard, 175 F.3d at 197; Vélez, 389 F.Supp.2d at 263.

**IV.   CONCLUSION**

In view of the foregoing, it is recommended that defendants' motion for summary judgment (Docket No. 22) be GRANTED.

IT IS SO RECOMMENDED.

The parties have **ten business days** to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

San Juan, Puerto Rico, this 9th day of January, 2008.

s/Marcos E. López
UNITED STATES MAGISTRATE JUDGE